Good morning, your honors. Amy Field on behalf of Appellant City of Los Angeles. This is a rather shocking sanctions order. It's shocking because before imposing such a potent sanction with such a high threshold of proof, the District Court didn't seem to have a clear grasp of exactly what the nature of the eliminate motion was, what it had ordered, and whether Defense Counsel had in fact violated that order. Because when you take the time to sit down and actually read the motion in limine, read the court's order, and read the transcript of what Defense Counsel argued, it's absolutely apparent that Defense Counsel didn't violate the order at all. The whole purpose of the motion is to give you an idea of what the nature of the eliminate motion was, and what the nature of the eliminate motion was. I think that was Mr. Arias' attempt to be diplomatic.  But to also come to his own defense and argue he certainly hadn't acted in bad faith. I mean, you have to know the guy. There's just nothing slick or shyster-like about this guy. He's just, you know, if he walks in the room and the door slams behind him, and somebody says, Arias, why'd you just slam the door? Even if he didn't, his first instinct is going to be, I'm sorry, I didn't mean to. And I think that's really what he was doing when he kind of made this kind of awkward concession that he had violated the order. But the bottom line is... But regardless, doesn't that waive any argument that the order wasn't violated? I mean, you have a sworn declaration saying, my one sentence in my closing argument that did in fact violate the court's order was a slip of the tongue. No, Your Honor, I don't think that does constitute a waiver. It would be, I think the waiver rule applies when it leaves the other side in a bad position where they haven't had the opportunity to develop the evidence because they think somebody's conceding something. But that's not what we have here. We have a complete and fully developed record in front of us. We know what the motion in limine was. We know what the court's order was. We know what the testimony and evidence at trial was. We know what Mr. Arias said. So I don't think the waiver rule applies here. And I think before the district court can make a finding of bad faith, the district court was obligated to sit down and look at that motion, look at what it had ordered, and determine for itself whether Mr. Arias had A, violated the order, and B, whether he had acted in bad faith. And he certainly never conceded bad faith. And when you look at the clear record in this case, there was no violation of the order. This whole motion in limine was to do one thing. It was to preclude the defense from floating a theory that Sergeant Matta's perception that Mr. Miller was armed when he came out of that lodge was in fact correct, and that the only reason nobody found a gun on his body after the shooting was because someone had slipped in and removed the gun from his body. That was what this was about. That was what plaintiffs argued in their motion in limine. And I'll just read real quickly from it. They said defendants did not find a firearm on Mr. Miller's body after the shooting. They intend to argue, however, that a civilian might have removed the firearm from Mr. Miller's corpse before the officers searched it. Defendants have no evidence to support such an inference, however, and such an argument should be excluded. That was what they wanted. And that was the nature of the court's order. The defense cannot argue or introduce evidence that Mr. Miller actually, and the court italicized that word, possessed a weapon when shot. Now if Mr. Arias had gotten up in his closing argument and had tried to make an argument to the effect of not only did Sergeant Matta reasonably perceive that Mr. Miller was armed when he came out of the lodge, but he actually was. And all the chaos that broke out after the shooting, somebody must have pulled that gun off Mr. Miller's body and walked off with it. That's why the cops didn't find it on his body when they searched the body. But that's not what Mr. Arias argued. All Mr. Arias argued was that from Sergeant Matta's perspective, when Miller walked out of the lodge, he had just been fighting with the victim being in the lodge. He had just shot being in the lodge. Let me just ask you that, because I was confused about that argument that was from Miller's perspective. So he says, but whatever happened, he's got a police officer in front of him. Is that from Miller's perspective? From Matta's perspective, from the sergeant's perspective. When he saw Sergeant Matta, oh, I'm trapped. And whose perspective is that from? It's Matta's perspective on what's motivating Miller. So you're saying it's Matta's perspective on what Miller was thinking? Correct. And why Matta perceived Miller as a threat. So he says, I can't go anywhere. My God, man, get down on the ground. So whose perspective is that? Matta's perspective on what Miller was thinking. Okay. So when he says he can't because he had shot being inside? That's Matta's perspective. And so does that suggest that if he shot being inside, that he has a gun? But you're saying it doesn't matter because this is Matta's perspective on what Miller is thinking. And that was something that was just totally permissible. Given that it doesn't say that, was the district court unreasonable in saying he's flagging to the jury that Miller had a gun? Yes, I think the district court was. He had shot being inside? That was the crux of the trial, Your Honor. The crux of this trial, what the jury had to decide was whether Sergeant Matta's perception or belief that there had just been this fight in the lodge, that Miller was the one who shot being, that he was coming out of the lodge still armed with a gun, coming out to finish being off. And then when he saw Sergeant Matta, felt trapped, caught by the police, and then put Sergeant Matta's life at risk, whether this was an objectively reasonable belief for Matta to harbor. That was the crux of this whole trial because of his belief that Miller posed this threat because he just shot someone, he was coming out to finish him off, and maybe to shoot Matta was objectively reasonable, then the use of force was objectively reasonable. That's what this trial was about. And the district court in the motion eliminate allowed for that testimony, and that testimony permeated this trial without objection. So I think we're kind of comparing apples and oranges here. I think you have a motion eliminate and an order on that motion that precludes one thing, and that is the defense from floating this theory that someone took the gun when no one was looking. We have no evidence of that. Let's say for one reason or another we don't I think you have to move on to the bad faith then, and I think you have to look at the fact that if this court... Let's assume the argument is waived, or we're just not persuaded by that, so I'm just giving you a chance to argue. I think you have to move on to the bad faith element. And that we review for abuse of discretion? No, that you view for clear error. Is it clear error? Yes. The district court's finding was based on a clearly erroneous perception of the facts, or understanding of the facts. I mean, bad faith is a high, high threshold. But you're in particular trouble if we get to that, aren't you? Because that's something that, aside from what's in the actual transcript, is a thing of the moment. In other words, the inference, the timing, how it was said, all of that is something that's peculiarly before the trial judge that we get a look at, but not a complete look. I think the court still has to review the clear and unassailable record in this case. And if Mr. Arias's five-word comment during this entire closing argument, if in this court's view, gets close to violating the in limine order, or violates it, it's in such a gray area. I mean, to me, I don't think that's a fair reading of the order. And does it rise to the level of bad faith? Well, that's another question. Well, I think there has to be some objective basis for the court to find that. I don't see it in the record. I don't think There are a couple of steps in that process, if I understand correctly. I mean, the first one is a question of whether he subjectively acted in bad faith, whether he was trying to pull a fast one, right? And you say that's a review for clear error? Yes? I'm sorry? That's a review for clear error? That's correct. So the next step in the district court's rationale was that, if I understand correctly, the fee or the sanction was the amount of fees spent by plaintiffs on the first trial. And as I understand, it was a causation that one sentence was the reason for the mistrial. I mean, that was part of the district court's finding. How do we review that? Let's say we do find your first argument. Let's say we pass or find it was bad faith. How do we review that next step? I think that also comes under the clear error standard. I think the decision to impose the sanctions is an abuse of discretion standard, but the findings that the lower court makes are reviewed for clear error. It's a little bit of a different kind of fact. It's one thing to perceive things in the courtroom. It's another thing to draw an inference as to the reasons why a jury hung. I mean, the district court doesn't have any more information about that either, right? That's right. The district judge wasn't in the jury room, wasn't privy to the deliberations. There was no post- I won't say post-verdict, but I guess it's not a verdict when they come back. There wasn't any debriefing of the jurors or anything of that sort as to what happened in the jury room, I take it. That's correct. I'm not even sure it would be proper to do that, but there wasn't, in fact. What that leaves this court with is an imposition of this pretty draconian sanction based on an awful lot of speculation. The speculation was that but for this five-word utterance by defense counsel, the verdict would have been for the plaintiff. And there's just absolutely no evidence to support that at all. And the after-the-fact record that the second trial resulted in a unanimous verdict for the defense kind of undermines that speculation that this was so damaging, so prejudicial to them. You've got a couple of minutes left. Do you want to shave them for a bottle? Yes, Your Honor. Thank you, Your Honors. I did try the case, and I think that Judge Phillips, for a week or more, was able to observe the defense counsel, as was I, and make an evaluation about the propriety. These five little words were not minor. To address Judge Yakuta's concern, there's a distinction here. When Sergeant Mata shot Mr. Miller, he was allowed to argue, or they were allowed to argue and present evidence on what his perceptions, his interpretation of certain behaviors, certain events were, as these 200 people poured out of this lodge. However, they were not allowed to argue that Mr. Miller, in fact, had a gun or had participated in the shooting that had occurred among a couple people inside the lodge prior to that. When Mr. Arias was arguing what the perceptions were of Mr. Miller's behavior, he all of a sudden, quite explicitly, as Judge Yakuta pointed out in the passage that was referred to, shifted to the fact that Mr. Miller was acting the way he was acting, the way that Sergeant Mata was describing him as acting, because he had just shot this man inside the lodge. Well, the opposing counsel says this passage is reasonably interpreted as showing what Sergeant Mata was thinking about what Miller was doing or thinking. Is that a reasonable interpretation? It's absolutely not a reasonable interpretation, and believe me, I was there and Judge Phyllis was there, and as soon as he shifted to that, I objected. She immediately sustained the objection. She immediately admonished the jury. Mr. Arias immediately apologized and then compounded his error in the way that he apologized. There was simply no question that he was claiming that there was evidence, really quite outrageous and absolutely unsupported in the record, that the deceit in this case, my client's deceit, had shot a man and then walked out to finish him off on the sidewalk. He didn't say that. He did not say anything about walking out to finish him off. He said maybe he had shot the guy inside. I don't see how that violates the limine order. Well, first, I would... We don't have the trial court's analysis on the violation of the limine order because Mr. Arias filed a declaration, and the city attorney's office filed a memorandum with the declaration saying that the order was filed, but if I could address specifically, Your Honor... That's what I was waiting for you to do. Well, in the city attorney's memorandum, which is in the record, describing the import of what Mr. Arias said, the exact language is that Miller had shot Mr. Bean inside the hall and then walked outside to give him the coup de grace. That is not my language. That is the city attorney interpreting for Judge Phillips what the import of Mr. Arias' statement during closing was to the jury. But that's nevertheless not what he said to the jury, so what he says, what the city attorney says in its papers is interesting, but unless you want to argue it's a waiver, which we can talk about, but right now I'm asking the question of whether or not this violated the limine order. It absolutely violated the limine order. Persuade me. I mean, just saying it doesn't do it. How did it violate the limine order? The limine order was that there was to be no argument that Mr. Miller had a gun. Mr. Arias... Had a gun ever in his life? Had a gun when he was shot. When he was shot, when he was outside, did he have a gun? What did the city attorney say? He said he shot Mr. Bean and then walked outside to finish him off. He didn't say that. He walked outside, he says, I'm caught, I'm trapped, and then he was shot. Where did he say he walked outside to finish him off? That was the clear import within the context of the testimonial. I didn't see it there. That's not what he said. Well, he said he shot him and then he walked outside. The clear import of that is that he had a gun. Well, he could have shot him inside and dropped the gun. There was no firearm recovered. So? In that part of the scene. So? I don't understand how his statement, he shot the guy inside, had any implication that he had a gun on him. I just don't see that. It certainly doesn't say say that, right? Well, I think it was clear to everybody in that courtroom that that violated the order, including Mr. Arias, including the trial court. But regardless, the trial court also said that, setting aside the violation of the in limine order, it was a clear violation because that statement was there were 200 people inside this hall. There were maybe two or three gunmen. Isn't that exactly what lawyers do in summation? They take the evidence presented to the jury and then they suggest influences that they can reasonably draw from it. I mean, they're not part of plans lawyers, right? When they argue on summation, you've done it. You say, look, this is what was specified, and from this you can infer that. Isn't that what you're supposed to do on summation? There was nothing to infer. I'm asking a question. Isn't that permissible summation? No, not when there's no evidence to base the inference on, to just fabricate evidence. There was simply no evidence whatsoever that Mr. Miller was and a police officer says, get to the ground, and he doesn't do it, right after there has been a shooting inside. You know, I think you're reasonably inferred that maybe he's a guy who did the shooting, and the reason he's not getting down is that he doesn't want to be nailed by the police, or he's going to try to make a getaway, or maybe do something nasty. Why doesn't the very fact that he doesn't get down and doesn't obey a police order following a public shooting, why isn't that enough evidence right there from which a reasonable lawyer can argue to the jury, look, he wasn't getting down. He, maybe the reason he wasn't getting down is that he's the guy who shot, who did the shooting. That is what Sergeant Mata was allowed to argue, that that's what he was thinking. The facts of this case, Your Honor, were that there were dozens of people coming out of this door, that dozens of people were not getting down, and were running away, that Mr. Miller was among them. That's what you would have argued in your summation. You would have said that there were dozens of people coming out, you know, and that's how it goes, and that's how we get juries, and that's how we get verdicts. And it was fine to argue what Mr. Sergeant Mata was thinking. It was not fine for this lawyer to say, with no evidence whatsoever, that this man had shot and wounded another person inside the hall, with no evidence whatsoever to support that. And in admitted violation of the court's in limine order, it was a very significant moment that's obvious in the transcript, and it really ruined the first trial. I think in terms of the... Can I ask you, let me just ask you how technically we interpret these motions in limine. I was struck by the Lazar, I guess, case, where the counsel had said something like he visited some local establishments, and did not technically violate the motion in limine, which said you can't talk about his drinking. But nevertheless, we upheld it. So I'm just wondering, is that the typical way we interpret motions in limine, in a non-technical way? Or how would you apply Lazar here? That the motion in limine has to be interpreted in the context of the trial, and what all the evidence and the totality of the evidence is in the trial. And the lawyers, and certainly the district judge, are in the best position to do that, which is why the standard of review is abuse of discretion, and the findings based on clear error. Here, it was clearly a violation of the motion in limine for Mr. Arias to say as a fact, and without any evidence, that this party goer had shot this other man, and then came outside and acted the way he did, because he had just committed an attempted murder. When it was told there was to be no argument that this man had a gun, and there was no evidence to support that whatsoever in the record. But what he was told is, don't argue that he has a gun. There was nothing about not arguing that he didn't, that he might have committed the shooting. Well, maybe your honor knows, I don't want to be sarcastic, but shooting someone. Then don't be. You can't shoot somebody without a gun. But you can drop a gun. People shoot and drop guns all the time. But there was no gun recovered in that part of the scene. There were 200 people in the scene. Somebody could drop the gun and somebody else could pick it up. And that was exactly what the motion in limine precluded them from arguing. That somebody else picked up the gun. You're making my point entirely. I'm sorry, I thought the motion in limine dealt with him with arguing that he, the victim, the guy who got shot, had a gun. See, this is why deference needs to be given to the trial court. The evidence was, and it was briefed, and it's all in there. What does the motion in limine say about other people picking up? That was what it was based on, that there was no evidence to support that anyone else picked up the gun, because the testimony of all the other officers, including significantly Sergeant Mata, as to whether or not the gun was picked up, that was all quoted from deposition to the judge, Judge Phillips, and she reviewed that very carefully, and she said, look, there is no evidence that the scenario that you just outlined could have happened under the officer's own testimony, so I'm not going to allow that to be presented to the jury. What is that? That he had the gun and that somebody else picked it up. That was what the motion in limine was based on. You can read it in the papers that are in the excerpt of record, and all the depositions, quotations, from the, it's tab 13, in the volume set 2, that we go through all of that. What is the page from the The page would be page I believe Well, it starts at 109 or 108 And it goes through page 111 on tab 13 in volume 2 of the excerpts That's where all the officer testimony about whether he was armed Begins. He didn't see anything in his hands. You never saw anybody take a gun off of Mr. Miller. Correct. That's on page 110. On page 111 The other sergeant who was present, did you see anybody remove a firearm or pick up a firearm? No. The firearms that were recovered were recovered in the back of the hall or in the backyard. This was in the front of the hall This was all in front of the judge when she made the order This was litigated very expressly After the motion in limine, wasn't there another interpretation that the district court gave to Arias regarding how he The district court applied the motion in limine to a line of questioning It came up the day before closing argument when Mr. Arias wanted to argue expressly that somebody had removed a firearm and that he might have had one during his questioning of Sergeant Mata We had a sidebar conference. We went over it. The judge said that's exactly what we don't allow Mr. Arias protested and asked that the motion in limine be modified to allow that to come in. The district court said no. Then later on Mr. Arias asked Sergeant Mata Well have there been other occasions where you have confronted people who were armed I objected. Again we had a sidebar She said to Mr. Arias you cannot argue that Mr. Miller was armed That's the motion in limine. You can ask a question about other occasions where in fact you confronted somebody who was armed but you can't suggest in any way that Mr. Miller was armed. She then admonished the jury and said there's no evidence in this case that Mr. Miller was armed and you're not to consider that. That happened the day before and that's referred to in the courts ruling and in support of her finding that this really egregious statement was not innocent or a mistake but tantamount to bad You say it's egregious but I just don't see it It was a five word sentence. The judge immediately jumped on it and gave a curative instruction. Told the jury to disregard it The counsel withdrew it. I can't imagine how Judge Phillips thought that this is what caused the hung jury. I don't think she necessarily found that this is what caused the hung jury. She found that this destroyed the integrity of the trial which it did. But if it didn't cause the hung jury there's no support for the sanctions unless we are convinced she is right on that I don't see how she can justify shifting the cost of the trial to defend What Judge Phillips did made quite a bit of sense. She said let's go ahead we're at closing argument. Let's let the jury deliberate If the jury comes out with a verdict for the plaintiff then it's no harm no foul we can go forward but if the result is anything else then I can declare a mistrial and consider the fact that this trial was not an appropriate trial I'm not arguing with that. That's a perfectly reasonable thing for her to have done probably what I would have done but that doesn't answer at all the question I asked. How could she possibly find that this one sentence which was then followed by a caution from the judge and a withdrawal from the lawyer even who assumed there was a violation which I'm still not convinced there was but let's assume that there was how this is what caused the hung jury to not reach a verdict. I just can't fathom it it doesn't go in my head. That's not the finding she made. The finding she made is that it destroyed the integrity of the trial. But if it's not that if it did not cause the jury to hang there's no justification whatsoever for shifting. The only way you can justify the shifting of the cost is say look you caused a second trial. The reason there was no verdict in the first case if you had to have a second trial is because the one sentence caused the jury to move from a situation where they would have reached a verdict to a situation where they didn't reach a verdict and it just doesn't compute for me I don't understand it. I can't imagine I mean this is a trial where the case is retried and the jury comes out the other way Well that wasn't before the court and I really think it's improper to be discussing that Oh really? You think it's improper? If you don't want to answer the question that's okay The question is how can you imagine that this is a case where in the next trial the jury goes the other way. The jury rules for the defendants The only way this sentence could have caused a mistrial is if they were all set to give it to the plaintiff in the first case and some juror said oh but he might have had a gun and hung for that reason I just don't see how that's possible Well I don't think that's your call. I think that's the district court's call and there are no juror affidavits and the district court specifically ruled under federal rule of evidence 603 that juror affidavits on this issue would have been improper I think this was a very close case I think you try it ten times you get several different verdicts You tried it twice. You got a defense verdict once and a hung jury in the other one And I think if I tried it again I could get a plaintiff's verdict. It was that kind of very very close case And what this man said to this who represents the police department and has access therefore to evidence that maybe didn't come into the trial that Mr. Miller shot this man Bean and then walked out and was shot by the officer. He asserted that as fact with no evidence whatsoever. The jury had sent notes saying Was anybody arrested for shooting Mr. Bean? You really asked the same question I was going to ask Thank you very much. You have a couple minutes for a bottle if you wish to take it Just that in answer to your question Justice Okuda about whether you have to be hyper technical I think the answer is yes. I think before you make a finding of bad faith against an attorney and shift the entire cost of a trial to one side or the other you have to be pretty darn sure that in fact How do you distinguish the Lazar case? I don't have that case in my mind your honor I'm sorry Other than just to say in this case I really do think you're talking about two different things. I think you're talking about an eliminate order that says the defendant the defense can't offer evidence or argument that someone took the gun off Mr. Miller's body because there's nothing to support it. Mr. Arias never argued that So in the Lazar case the motion eliminate said counsel can't argue that the plaintiff used alcohol on the day of a car accident and then the statement was well he visited some local establishments and they made reference to body language and rolling eyes or whatever it was and the court said that violated the motion eliminate we upheld it so it seemed like we've at least said we don't have a technical interpretation of motion eliminate so that raised a concern for me in this case Well and I would say your honor I think the facts that you've just set forth in the Lazar case are far closer than what we have here. I think what Mr. Arias did was so far apart from what he was prohibited from doing under the eliminate order that I don't think that there's a violation at all and I would just ask the court to look carefully at the motion the order and what Mr. Arias said he was completely permitted to make those arguments and offer that evidence of what how Sergeant Maddox perceived the facts and that's all he was arguing and the very last point I'd like to make is I think really what Mr. Arias was doing was being trying to hurry up and finish his closing argument just minutes before he made these this five sentence statement that's become the focus of this appeal the trial court had told Mr. Arias I'm sorry you need to slow down all right your honor and then she said and you've got about ten minutes left so you want me to slow down yes and that's the reason why I said these two things together I think he was just trying to speed things up and had he inserted the words Sergeant Maddox does the record show how experienced Arias is how many cases he's tried he's very experienced I think he said he was at 36 years of practice at the point that this whole case was tried and the sanctions motion came up
judges: Piersol, Kozinski, Ikuta